Thank you. Thank you both. We'll reserve decision, but this time we'll hear Kim v. Yoo. Should I proceed, Your Honor? Good morning. May it please the Court, my name is Kenneth McCallion and this is Chris Larson, and we represent the appellants in this particular case. We think that there should be a reversal, both relating to Mr. and Mrs. Yoo, the two defendants. However, in all candor, I'll first mention the case against Mrs. Yoo, clear cut, should be reversed, because there's absolutely no evidence supporting the Court's finding that, as the Court wrote in its post-trial opinion, that Sandra Yoo was complicit in her husband's alleged fraudulent conveyances and is liable for a money judgment for whatever amounts are necessary to satisfy the mortgage on the home and the Brooklyn property. Why does there need to be evidence that she was complicit? Well, this was the Court's finding, which there is not a basis for it. However, the Court was this is an enforcement action in seeking to enforce the underlying judgment, which is granted not against Mrs. Yoo, but I thought the theory is that she's holding property that was fraudulently conveyed to her, so in seeking to enforce the judgment against Mr. Yoo, simply trying to get that property back and the fact that she has dissipated the property in some fashion gives rise to the money judgment. It's not that she's liable for the underlying judgment itself or for that matter at fault. It's just that she has property that belongs to which the plaintiffs are entitled. Isn't that the theory? Well, that's the theory, but it doesn't apply here, because in finding a money judgment for the amounts of the mortgages, let's say a million dollars, the Court awarded that to the plaintiffs, requiring Mrs. Yoo to pay one million dollars. She placed the mortgage on the property. Well, she did it in conjunction with her other family members as well, but she's... She depreciated, she depreciated the value, diminished the value of the property that had been fraudulently transferred to her by placing a mortgage on it and receiving funds under that mortgage. Well, there's no... The remedy that's being sought is to require her to turn over enough money to satisfy the mortgage so that the property that was fraudulently conveyed to her would return to the value that it had before a mortgage was placed on it. That would be appropriate even if the person in Mrs. Yoo's newborn infant, and then somebody acting on behalf of the newborn infant placed a mortgage on it, the same kind of relief could follow without need for the newborn to be in complicity with the fraudulence of the transfer. Even assuming there was a factual basis for that, the Court got it wrong by imposing a judgment in favor of the plaintiffs against her because the mortgagee, the banks, she and her husband still owe their money to that particular bank and basically also has a judgment against that. The Court could have, I'm not saying it would have been appropriate, ordered her, for example, to repay the bank the mortgage that is amount... in the amount of the two mortgages and therefore restored some equity. To the extent that the plaintiffs, let's hypothesize, get the property, they're getting it subject to the mortgage. So by providing them with the money judgment, you're essentially making them whole and giving them the value, the full value of the property. Isn't it effectively the same thing? Does it matter who she's directed to repay? Oh, absolutely. Because Rule 19b, for example, the necessary party is a bank because we have a double obligation and double recovery at this point. She still owes the money to the bank. The Court could have said, well, repay the bank, instead the Court said, well, give the money to the plaintiffs. And that's specifically what the Court said in denying the motion to dismiss what it wasn't going to do, which would be to impose a specific money judgment against family members. We have to keep in mind that this is an ancillary action. She asked the district court to have the judgment changed to allow her to pay off the mortgage and then be relieved of the obligation to pay the plaintiff? Well, there's another appeal pending and there were subsequent orders by this specific Court. She did not specifically ask that because she felt there was no basis. The purpose of the money judgment and the amount at which the money judgment was set was the amount sufficient to enable the mortgage to be paid off. No, the mortgage wouldn't be paid off. She'd still owe that million dollar mortgage to the bank. I said that the amount of the money judgment in favor of the plaintiff was an amount sufficient to allow the plaintiff to see that the mortgage is paid off so that the property would return to its value in the hands of the original defendant. No, it was just a million dollar order that would go to the plaintiffs. The plaintiffs wouldn't be obligated to do anything other than put it in their pocket. It wouldn't necessarily be credited even against the money judgment. The amount at which the judgment was set, was that not the amount necessary to pay off the mortgage? Yes, to go to the plaintiffs. There still would be a mortgage on the property. I started with, did she ask the Court to modify the judgment so that if she paid off the mortgage, so that the mortgage ceased to exist, she would then be relieved of the money judgment in favor of the plaintiff? Did she ask the Court for that? No, Your Honor. We appealed because there is no basis for the imposition of that particular money judgment. Both Mr. and Mrs. Yu's actions were consistent, not with her complicity in a fraudulent transfer, alleged fraudulent transfer by her husband, but they're consistent. For example, in the condominium, the evidence was that Wells Fargo Bank asked that Mrs. Yu come in as an additional signator on the mortgage. There was no cash out. It was specifically to lower the rate. It was a refinancing. And the transaction was really a minor adjustment of the property. It was one-third of Mr. Yu's interest was conveyed to Mrs. Yu. This is consistent with complying with a request from the bank when, if in fact Mr. Yu and Mrs. Yu, if she was complicit, they would have tried to protect all of Mr. Yu's interest in the condominium, for example, instead of just transferring a very limited interest. You've reserved three minutes for rebuttal. You could use them now. I'll reserve. Good morning, Your Honors. My name is Kenneth Kimmerling. I'm an attorney at the Asian American Legal Defense and Education Fund. I'm joined this morning by Adam Goldstein from Sherman Sterling and Jackson Chin from Latino Justice. We're all counsels to the plaintiffs, the appellees. Let me address where Mr. McCallion led off. The condo has nothing to do with this argument. There's no obligation to pay the mortgage on the condo in the judgment. It's just for the home and the Brooklyn properties. I have no idea why he's discussing the condo because it's not in play on this issue at all. In fact, the judge, in finding complicity in the intent provision, only involved the home and the Brooklyn property as well. I don't think there's any basis from what he said for any reversal here. I think what you've seen and read is a very comprehensive and well-supported opinion. It's almost 60 pages long in which all of the factual findings have clear recitations of the record that support them. As you've seen from their briefs, it's hardly a challenge to those findings. They never analyze what the court decided. They often cite to the direct testimony of their clients, but not to the judge's basis for his decision where he's reviewed them, said this is what they argue, but this is what I find. I find it based on these, which is very often the transcript of the deposition being read back to them that shows the inconsistencies between their trial testimony and their deposition testimony. As you saw, there's extensive findings about credibility here. The judge found that the three witnesses, which were Mr. Yu, Mrs. Yu, and the accountant, Mr. Lee, were unreliable and self-serving in their testimony. In particular, they tried to coordinate their series and laid out at length in the opinion of inconsistent and conflicting testimony. In fact, they know that Mrs. Yu, in an attempt to show consideration in this case, offered some checks, copies of checks that she claimed showed that she gave consideration to her husband for these conveyances. What about the mortgagees of these properties, the banks? Shouldn't they be here while all of this money is being distributed? Their interest is getting paid, their mortgage. That's correct. And the mortgage hasn't been lifted. Mortgage is still in effect. They're getting paid. They're foreclosing right now in Brooklyn on the Brooklyn property. They've named the defendants, Mr. Yu and Mrs. Yu. They're going to get their money. We have a sheriff's action going against the Brooklyn property. We've listed, as we're required to, the mortgagee. The liens are going to get satisfied. The court hasn't overwritten them. We haven't asked it to. There was no basis. We're sort of talking about their Rule 19 motion to dismiss, but as the court pointed out, they've made no showings, and they never renewed it, or they never tried to bring in the mortgagees themselves. They're unnecessary. In the calculation of whether they were insolvent, Mr. Yu was insolvent, the district court assigned no value to the two restaurants, correct? That's correct. And why was that? Because he said they had the burden, in the first instance, of rebutting the presumption of the definition of insolvency includes whether they have saleable assets and the value of those saleable assets, so that the burden was on them to bring forward evidence of the saleable value of their assets, and they didn't. They brought simply the tax return, which is the book value. And as you said in the McCready case, Your Honor, the book value is not sufficient. You have to look at the saleable value. But let me say one more thing. If you looked at the liabilities that the court found and the assets, even if you added the book value, and the judge calculated it in his opinion as we set forth, they're still in debt on the first conveyance of over $800,000 and in the second conveyance over $3 million. So, I mean, excuse me, Mr. Yu is in debt in that amount, even considering the book value taken from Schedule L of the tax return. And so the court was very careful. And even though it set out at the outset that the book value isn't going to move the needle because that's not showing anything about solvency according to the definition, it went ahead and calculated it. And we've included that in our brief in the citations to the record where he's done that. And if not, I have it available this morning. But so I think What about the claim of improper ancillary jurisdiction? It's totally meritless. I mean, the question in Peacock and Epperson is whether or not we're trying to impose the debt that Mr. Yu owes for wage theft on the transferees, and we're not. There's nothing in this case that does it. They made a motion to dismiss, the judge denied it. They made a motion for summary judgment, the judge denied it. They made the same argument again, the judge denied it in his opinion. And they completely ignore each time that he said, this is not an effort to impose the liability for the wages on Mrs. Yu or on the children. This is an effort, as the court has already discussed, about having the depreciated value compensated for so that the mortgages get paid when the property gets conveyed back to Mr. Yu. So when we sell it, and we hope to, that the full value of the property, particularly the Brooklyn property, goes to the plaintiffs in this case. I don't have... Thank you. Thank you very much. Your rebuttal. Quite simply on the jurisdictional basis, there's no diversity jurisdiction here, and there's Mrs. Yu was not a judgment debtor. It was an ancillary matter. And Peacock, the Supreme Court, is clear the federal courts do not possess ancillary jurisdiction over new actions in which jurisdiction against creditors seek to impose for any money judgment on persons other than those liable for the judgment. The court acknowledged that in its motion to dismiss decisions saying, I'm not going to impose a money judgment on any of the family members, but that decision post-trial, it is a money judgment, not in a specific amount, but in the amounts of the mortgages going to the plaintiff. And that's one fundamental error by the judge here. The jurisdiction is in the New York courts, where as counsel went off the record, but he is absolutely correct. Only yesterday, the Supreme Court of Brooklyn imposed a receiver on the Brooklyn property. It's a matter that is being litigated there. They're claiming that on the underlying judgment, they're entitled to something instead of the banks. But we have this appeal from a judgment, which is really improper in that the court asserted federal court jurisdiction when there is none, neither diversity nor statutorily, against Mrs. Yu and imposed a judgment, a money judgment notwithstanding. She is liable twice. She has a money judgment sitting there in this particular case and the decision against her, which we're not suggesting they do it. They could pursue against her independent assets for that. There was no restriction upon that with regard to Mrs. Yu, who was not a judgment debtor until the court improperly, we think, rendered the post-trial verdict. On the solvency analysis, the court went out of its way to disregard this court's holding in Lippe. It went up to this particular court. It was decided by the district court. Clearly, a subjective standard should apply to Section 273. Any subjective analysis here did not work in the lower court because it would require hindsight, not an evaluation at the time when these conveyances took place in 2010 and 2011. The defendants would have had to have a judgment against them for $3.84 million, a double tax, a 200 percent penalty imposed, all which happened later on. So the court knew that that subjective analysis didn't work. It then applied an objective standard, which is unsupported by either New York state law or the court's ruling in Lippe or the district court ruling. Well, the district court ruling in Lippe, which went up to this court and was affirmed, which is really, as far as we can tell, the only pronouncement in this particular court of New York state law. The court went and looked and tried to find New York law that might have changed this subjective standard. It couldn't find that. The most the court could say was that there was some New York state cases that did not address the issue. But Lippe, we suggest, is still the law in the circuit. And under any subjective standard, Mr. Yu could not have possibly thought that he was insolvent at the time these transactions took place. It was merely an internal tinkering within the family of the adjustments of percentages for these properties and at Mrs. Yu's insistence that she take a greater role in management control of these properties. Thank you. Thank you very much, Your Honor. Both will reserve decision.